IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| THE PETERSON COMPANIES, *et al.*, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 17-00473-CV-W-GAF |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER

Presently before the Court is Defendant City of Kansas City, Missouri's ("Defendant" or "City") Motion for Summary Judgment. (Doc. # 55). Plaintiffs The Peterson Companies, Hunters Glen, Inc., The Lakes Apartments, Inc., London Towers Apartments, LLC, and Tanglewood Apartments, LLC (collectively "Plaintiffs") oppose. (Doc. # 63). For the reasons stated below, Defendant's Motion is GRANTED.

## DISCUSSION

### I.    FACTS

Defendant is a charter city in the State of Missouri.[1] Plaintiffs Hunters Glen, The Lakes Apartments, London Towers Apartments, and Tanglewood Apartments are apartment complexes owned and operated by Plaintiff The Peterson Companies. (Doc. # 56-23, pp. 11-13, 16). Former co-defendant Heartland Apartment Association ("Heartland" or "HAA") is an apartment membership organization that lobbies and advocates on behalf of its members. (Doc. # 56-2).

---

[1] The Court takes judicial notice of Mo. Rev. Stat. § 82.010, which allows for any city in Missouri to frame and adopt a charter for its own government. The Court also takes judicial notice that the City of Kansas City, Missouri, has adopted a charter. *See* Charter City of Kansas City, https://data.kcmo.org/Legislation/Charter-2014/i8es-jfcs?firstRun=true.

1

Plaintiffs were members of Heartland for many years. (Docs. ## 56-3, ¶ 2; 56-4, ¶ 2; 56-5, ¶ 2; 56-6, ¶ 2).

A. The City's Apartment Rebate Program

On January 15, 1971, the City enacted an ordinance providing for the collection of solid waste from all residences within the City except for "residential refuse from trailer parks or buildings containing seven or more dwelling units." (Doc. # 22, ¶ 10).[2] Three lawsuits were filed and subsequently combined in 1974 and 1975 alleging that the exclusion of buildings and trailer parks with seven or more dwelling units violated equal protection. (*Id*. at ¶¶ 1, 12); *see Byers & Danneberg, et al. v. City of Kansas City, Missouri*, No. C-74-172; *Frances Max, et al. v. City of Kansas City, Missouri*, No. C-74-173; *Nigel T. Graham, et al. v. City of Kansas City, Missouri*, No. C-75-515.[3] On February 20, 1976, the Circuit Court of Platte County, Missouri, found that the City's then-existing exclusion of buildings with seven or more units was a violation of equal protection. (*Id*. at 13).

After the ruling, the attorney for the plaintiffs and the attorney for the City signed a Joint Stipulation and Agreement ("*Graham* Settlement") in which Defendant agreed to provide refuse collection or a rebate to those buildings with seven or more dwelling units which provided "services" to those units. (Doc. # 56-9, ¶ 2). The *Graham* Settlement defined "services" as "residential refuse collection and disposal services . . . which meet or exceed criteria hereafter established by any ordinance of city-wide application . . . ." (*Id*. at ¶ 1(c)). The *Graham* Settlement defined "owners" to mean "the owners or authorized managing agents of the owners of apartment

---

[2] Defendant cites to Plaintiffs' Amended Complaint (Doc. # 22) in support of certain statements of fact. Generally, these statements are allegations, not evidence. However, the statements will be considered supported to the extent Plaintiffs admit the facts in their opposition.

[3] The Court will refer to the combined litigation as "*Graham*."

buildings containing seven or more dwelling units. . . located within the City of Kansas City, Missouri." (*Id*. at ¶ 1(a)). The Circuit Court of Platte County incorporated the terms of the *Graham* Settlement into a Modified Judgment ("*Graham* Judgment"), dated September 1, 1976. (Doc. # 22, ¶ 20). The *Graham* Judgment contains the following language:

> [A] Mandatory Injunction is hereby entered directing the City of Kansas City to provide refuse collection services, or the cash equivalent thereof, to the properties of the plaintiffs and to the properties of others similarly situated, and to dwelling units located in trailer parks, under the terms and conditions specified in the Stipulation and Agreement filed herein.

(*Id*. at ¶ 22). On November 24, 1976, Kansas City amended its refuse collection ordinance by incorporating the language and intent of the *Graham* Settlement and the *Graham* Judgment. (*Id*. at ¶ 24). This formally established the City's Apartment Rebate Program. (*Id*.).

**B.      2010 Apartment Rebate Repeal and the 2010 Settlement**

In the 2000s, the City was faced with several economic recessions. (Doc. # 56-15, 8:20-25). Due to these recessions, the City was in a constant state of budget crisis throughout most of the 2000s and was looking for ways to save money. (*Id*. at 7:2-9:15; Doc. # 56-16, 33:6-35:9). In 2010, the Apartment Rebate Program was repealed by the City. (Docs. ## 56-20; 56-21).

In 2008, when elimination of the Apartment Rebate Program was being considered by the City Council, Heartland threatened to sue the City for breach of the *Graham* Settlement and violation of the *Graham* Judgment. (Doc. # 22, ¶¶ 44-47, 60). On March 2, 2010, Heartland and the City signed the 2010 Settlement Agreement ("2010 Settlement"). (Doc. # 56-23). Pursuant to the 2010 Settlement, the City agreed to provide the Apartment Rebate to Heartland members. (*Id*. at ¶ 2). The Rebate Program would continue for those Heartland members at the time 2010 Settlement was signed who maintained their Heartland membership. (*Id*.). Beginning in 2011, Heartland was tasked with updating the list of eligible members, which would remove members

from the rebate list if they did not maintain current membership status. (Docs. ## 56-17, ¶ 15; 56-23, ¶ 2). The 2010 Settlement required Heartland to notify the City of the updated member list by May 1 of each year. (Doc. # 56-23, ¶ 2). At the time the 2010 Settlement was signed, Hunters Glen, The Lakes Apartments, London Towers Apartments, and Tanglewood Apartments, were listed as Heartland members. (Doc. # 63-4, pp. 12-13, 16, 25).

C.   **The *Sophian Plaza* Litigation**

On February 27, 2015, Sophian Plaza Association, Townsend Place, and Stadium View Apartments, on behalf of themselves and others similarly situated, sued the City over its repeal of the Apartment Rebate Program and denial of refuse collection to buildings with seven or more dwelling units.[4] (*See* Doc. # 56-24). A class was certified on December 4, 2015 and defined as "all managers and owners of trailer parks, condominiums, apartments and buildings containing seven or more dwelling units located in Kansas City, Missouri during the class period May 2010, to the present. Excluded from the class are members of the Heartland Apartment Association as of February 27, 2015." (Doc. # 56-26, ¶ 1). The class sued the City for, amongst other claims, breaching the *Graham* Settlement and the *Graham* Judgment. (Doc. # 56-25, ¶¶ 47-54-65). On April 7, 2017, the Circuit Court of Platte County, Missouri at Platte City entered findings of fact, conclusions of law, and amended judgment. *Sophian Plaza Assoc. et al. v. City of Kansas City, Missouri*, No. 15AE-CV-00546 (Platte Cty. Cir. Ct. April 7, 2017). The Circuit Court found that the City breached the *Graham* Settlement and the *Graham* Judgment. (Doc. # 56-25, at pp. 20-21).

D.   **Plaintiffs' Relationship with Heartland**

---

[4] The Court will refer to this previous case as "*Sophian Plaza*."

Heartland membership is granted on a yearly basis and runs from January 1 through December 31. (Doc. # 56-7, ¶ 3). Heartland bills its members for the upcoming year in September of the previous year. (*Id*. at ¶ 4; Doc. # 56-8). Plaintiffs were billed for their Heartland memberships for their properties in September 2013 for the 2014 membership year. (Docs. ## 56-7, ¶ 5; 56-8). Plaintiff Peterson Companies paid the 2014 membership fee for its properties in February 2014, entitling Plaintiffs to 2014 Heartland membership. (Docs. ## 56-7, ¶ 6; 56-8). Plaintiffs' Heartland membership expired on December 31, 2014. (Doc. # 56-7, ¶ 7). Plaintiff Peterson Companies was billed in September 2014 for 2015 Heartland membership. (*Id*. at ¶ 8). Plaintiff Peterson Companies did not pay for 2015 Heartland memberships for the properties it owned. (*Id*. at ¶ 9). Plaintiff Peterson Companies did not rejoin Heartland until Plaintiffs Hunters Glen, Tanglewood, and the Lakes paid dues on March 27, 2018 for the 2018 membership year. (*Id*. at ¶ 10). On April 23, 2015, Heartland's letter to the City informed the City that those properties highlighted in red were not in good standing with Heartland and, therefore, were no longer eligible to receive the Apartment Rebate. (Doc. # 56-18).[5] Hunters' Glen, The Lakes Apartments, London Towers, and Tanglewood were all highlighted in red in Heartland's April 23, 2015 letter. (*Id*. at pp. 5-6, 10). Pursuant to the 2010 Settlement and the April 23, 2015 letter from Heartland, Defendant removed the properties that were highlighted in red from the Apartment

---

[5] Plaintiffs assert that the letter offered by Defendant cannot be considered by the Court because it is "hearsay and no foundation is provided for the letter." (Doc. # 63, ¶¶ 54-56). However, the standard for consideration of evidence at the summary judgment stage is "not whether the evidence at the summary judgment state would be admissible at trial–it is whether it *could* be presented at trial in an admissible form." *Gannon Intern., Ltd. V. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in original). Because Plaintiffs do not provide an explanation on whether the proffered evidence *could* be presented at trial in an admissible form and did not offer any evidence to controvert the facts supported by this letter, the Court will consider the letter as evidence and deem the facts that it supports as uncontroverted.

Rebate Program, including Hunters' Glen, The Lakes Apartments, London Towers, and Tanglewood. (Docs. ## 56-17, ¶ 17; 56-18, pp. 5-6, 10).

**E.     Procedural History**

Plaintiffs originally filed their petition against City and Heartland in state court on May 9, 2017. (Doc. # 1-2). The City removed the case, with the consent of Heartland, to this Court on June 9, 2017. (Doc. # 1). Plaintiffs subsequently filed an Amended Complaint, raising eleven counts against Defendants City and Heartland: breach of membership agreement against Heartland (Count I), breach of the 2010 Settlement against the City (Count II), breach of injunction against the City (Count III), breach of the *Graham* Settlement against the City (Count IV), breach of the 2010 Settlement against the City (Count V), civil contempt (Count VI), unjust enrichment, constructive trust, breach of fiduciary duty, and tortious interference against Heartland only (Counts VII-X), and violation of 42 U.S.C. § 1983 against both Heartland and the City (Count XI). (Doc. # 22, pp. 15-32). On December 13, 2017, this Court dismissed Counts III and VI and ruled that punitive damages were not available against the City. (Doc. # 45, p. 13). On March 30, 2018, Plaintiffs and Heartland entered a stipulation of dismissal, and this Court dismissed Heartland from the lawsuit on April 2, 2018. (Docs. ## 52, 53). As such, the remaining four counts against the City are: Count II for breach of the 2010 Settlement; Count IV for breach of the *Graham* Settlement; Count V for breach of the 2010 Settlement; and Count XI for liability under § 1983 for violations of due process.[6]

---

[6] The Court believes that Count II and Count V are substantially similar claims. Count II, titled "Breach of Settlement Agreement Against City of Kansas City, Missouri," states that City breached the agreement because it did not have the authority to refuse payment to Plaintiffs and this refusal breached the contract. (Doc. # 22, ¶¶ 102-111). Count V, titled "Breach of HAA Settlement Agreement by City," seeks damages for City discontinuing rebate payments to Plaintiffs in breach of the HAA Settlement. (Doc. # 22, ¶¶ 125-129). Because the claims are substantially similar, the Court will not engage in an independent analysis of both claims.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the movant] is entitled to judgment as a matter of law." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Essentially, parties resisting a motion for summary judgment must support their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (first alteration in original) (quoting *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid a summary judgment." *Id.* Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. ANALYSIS

### A. Count IV: Breach of the *Graham* Settlement

Defendant argues that Count IV, a claim for breach of the *Graham* Settlement, is barred by res judicata. (Doc. # 56, pp. 20-22). Defendant previously asserted this same argument in support of its Motion to Dismiss. (Doc. # 29, p. 2). In its previous Order, the Court passed on this argument because of the lack of support for a conclusion based on the Complaint alone. (Doc. # 45, p. 6). In discussing the City's res judicata argument, the Court stated: "it is plausible that [Plaintiffs]

7

were still members of Heartland on February 27, 2015, and fell out of good-standing with the association sometime before they made their April 8, 2015 demand for payment." (*Id*.). Defendant has asserted this argument again and, because evidentiary support now aids the Court in its analysis, the Court will again address Defendant's res judicata argument.

"'Res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases.'" *Cardona v. Holder*, 754 F.3d 528, 530 (8th Cir. 2014) (quoting *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990)). "Under Missouri law, a judgment on the merits at the trial-court level is considered a final judgment for purposes of res judicata and collateral estoppel . . . ." *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227-28 (8th Cir. 2015) (quotation omitted).

The first two requirements have been satisfied in this case. First, the previous judgment was rendered by the Circuit Court of Platte County in Platte City. (Doc. # 56-26). Second, the judgment was a final judgment on the merits of the class' breach of the *Graham* Settlement claim. (*Id*. at pp. 20-21). Third, the same cause of action was involved in both cases–both the *Sophian Plaza* class and Plaintiffs claimed a breach of the *Graham* Settlement stemming from the City's repeal of the Apartment Rebate Program. (*Compare* Doc. # 56-26, ¶ 4 *with* Doc. # 22, ¶¶ 119-124).

To resolve the final issue regarding res judicata in this case, the operative question is whether Plaintiffs were members of Heartland as of February 27, 2015, the date provided for the exclusion of Heartland members from the *Sophian Plaza* class. If Plaintiffs were members of Heartland on February 27, 2015, they were not members of the class and res judicata would not

serve as a bar to Count IV. Conversely, if Plaintiffs were not members of Heartland on February 27, 2015, they were members of the class and res judicata would serve as a bar to Count IV.

Defendant has proffered evidence that Plaintiffs were billed for their 2015 Heartland memberships in September 2014. (Doc. # 56-7, ¶ 8). Defendant also cites to evidence that shows that Plaintiffs did not pay for their 2015 Heartland memberships. (*Id*. at ¶ 9). Lastly, Defendant presented evidence that Plaintiffs' memberships lapsed on December 31, 2014. (*Id*. at ¶ 7). As such, evidence supports that Plaintiffs were not Heartland members as of February 27, 2015. Plaintiffs contend that they were Heartland members because they continued to receive payments from the City until June 2015. (Docs. ## 63, pp. 4-6; 63-1, ¶¶ 3-10). While Plaintiffs have offered evidence that they received payment from the City until June 2015, they offer no evidence to controvert Defendant's evidence that Plaintiffs' Heartland memberships lapsed on December 31, 2014. The fact that Plaintiffs received payment until those dates is consistent with the procedure outlined by the Settlement Agreement. Defendant received a letter with the updated member list from Heartland in April 2015, prior to the May 1 deadline set in the Settlement Agreement. (Docs. ## 56-18; 56-23, ¶ 2). However, Defendant's receipt of notice that Plaintiffs' Heartland memberships had lapsed is distinct from the issue of *when* Plaintiffs' memberships lapsed. Defendant's uncontroverted evidence shows that Plaintiffs had not paid for their 2015 memberships as of February 27, 2015. Because Plaintiffs were not Heartland members as of February 27, 2015, they were members of the *Sophian Plaza* class. Because Plaintiffs were members of the *Sophian Plaza* class, the parties in *Sophian Plaza*—including Plaintiffs, as class members, and City—are the same as the parties in this case. Defendant has shown that Count IV is the same cause of action between the same parties as *Sophian Plaza*. Because the prior decision

was a final adjudication on the merits by a court of competent jurisdiction of the same cause of action between the same parties, res judicata bars relitigation of Count IV.

**B.      Count II and Count V: Breach of the Settlement Agreement**

Defendant also seeks summary judgment on Counts II and V by asserting that it did not breach the 2010 Settlement. (Doc. # 56, pp. 22-23). Plaintiffs allege that Defendant breached the 2010 Settlement by removing them from the Apartment Rebate Program. (Doc. # 22, ¶¶ 110, 127). Defendant states that it was required to remove Plaintiffs from the Apartment Rebate Program pursuant to the terms of the 2010 Settlement because Heartland informed them that Plaintiffs were no longer members in good standing. (Doc. # 56, pp. 22-23; 56-18; 56-23, ¶ 2). Plaintiffs counter this assertion by arguing that the provision of the Settlement Agreement that mandates the removal of entities no longer in good standing with Heartland from the Apartment Rebate Program should be viewed as void. (Doc. # 63, pp. 31-32). Plaintiffs further argue that because this provision of the 2010 Settlement is unenforceable, Defendant violated the remaining terms of the contract by removing them from the Apartment Rebate Program. (*Id.*).

To support their argument that the provision mandating removal of parties not in good standing with Heartland is void, Plaintiffs state: "As a general rule, where substantial and necessary terms of a contract are left open for future negotiation, the purported contract is void." (*Id.* at p. 32). Neither of the cases cited by Plaintiffs in support of this statement, *Olathe Millwork Company v. Dulin*, 189 S.W.3d 199 (Mo. Ct. App. 2006), nor *Richie Company, LLP v. Lyndon Insurance Group, Incorporated*, 316 F.3d 758 (8th Cir. 2003), found a contract to be unenforceable due to a clause that allowed for future modification of contractual beneficiaries. In *Olathe Millwork*, the Missouri Court of Appeals determined that a construction contract was unenforceable due to a lack of specifications of the construction project and the absence definitive

10

price term. *Olathe Millwork*, 189 S.W.3d at 204-05. In *Richie*, the Eighth Circuit affirmed the district court's determination that a writing between parties was an unenforceable "agreement to agree" rather than a binding contract. *Richie*, 316 F.3d at 762. Notwithstanding the lack of support for their argument, the Court will address Plaintiffs' argument that the provision is void because it leaves substantial and necessary terms open for future negotiation.

The at-issue term of the settlement agreement is as follows:

> [T]he City shall administratively continue in full force and effect and without protracted interruption the Trash Rebate Program as provided by the Stipulation and as mandated by the Modified Judgment solely with regard to those members of HAA identified in the list attached to this Settlement Agreement as Exhibit A and incorporated herein . . . HAA shall, beginning in 2011, annually update the list of Eligible HAA Membership by providing on or before May 1 to the City, c/o Galen Beaufort or successor, a revised version of Exhibit A [list of HAA members]. Annual revisions to Exhibit A shall not add new entities or properties to the list of Eligible HAA Membership, but may remove or reinstate entities or properties listed as Eligible HAA Membership on the original Exhibit A based on such Eligible HAA Membership entity's or property's current membership status with HAA.

(Doc. # 52-23, ¶ 2). From the face of this clause, it is not apparent that substantial and necessary terms of the contract are left open for future negotiations. This clause imparts City with the duty to continue the Apartment Rebate Program to those entities listed on Exhibit A, as updated annually by Heartland. Further, this clause imparts Heartland with the duty to annually update Exhibit A by providing a revised version of it to the City. This clause is not ambiguous as to future performance, nor does it necessitate further negotiation of material terms such that the provision is unenforceable. The fact that the names of entities listed as recipients on Exhibit A are subject to change does not mean that substantial terms between the contracting parties, the City and Heartland, were left open for future negotiation. As such, the Court rejects Plaintiffs' argument that the clause is invalid. Therefore, the Court will analyze Count II and Count V under the terms of the 2010 Settlement in its entirety.

11

"A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) the plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). The third element is at issue, whether City breached the Settlement Agreement by removing Plaintiffs from the Apartment Rebate Program. Defendant has offered evidence that on April 23, 2015, Heartland, pursuant to its contractual duty, provided an updated membership list with members who were ineligible to receive the rebates highlighted in red. (Doc. # 56-18). All of Plaintiffs were highlighted in red. (*Id*. at pp. 5-6, 10). Pursuant to the 2010 Settlement, the City ceased making payments to Plaintiffs and removed them from the Apartment Rebate Program. (Docs. ## 56-17, ¶ 17; 56-23, ¶ 2). The uncontroverted evidence shows that Defendant met the terms of the Settlement agreement by providing the rebate to only those entities listed by Heartland as eligible to receive the rebate. Plaintiffs are unable to show that Defendant breached the terms of the 2010 Settlement. Therefore, the City is entitled to summary judgment on Counts II and V.

C.     **Count XI: 42 U.S.C. § 1983 Due Process Claim**

Defendant lastly moves for summary judgment on Count XI because it asserts there was no violation of substantive or procedural due process. (Doc. # 56, pp. 24-27). Plaintiffs did not specify in their Amended Complaint whether the alleged violation of due process was substantive due process or procedural due process. (*See* Doc. # 22, ¶¶ 170-187). Plaintiffs subsequently assert that the City has violated both their substantive and procedural due process. (Doc. # 63, pp. 33-37). In its previous Order, the Court explained that Plaintiffs must produce the documents that display that they possess a property interest that warrants fourteenth amendment protections. (Doc. # 45, p. 12).

The First step in in analyzing a substantive due process claim is to consider whether the Plaintiffs "'possessed a right arising under the Fourteenth Amendment.'" *Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006) (alterations omitted) (quoting *Wells v. Walker*, 852 F.2d 368, 370 (8th Cir. 1988)). To establish a procedural due process violation, a plaintiff must prove that the defendant deprived him or her of "life, liberty, or property." *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004). As such, "[a]nalysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated." *Riley v. St. Louis Cty. of Mo.*, 153 F.3d 627, 630 (8th Cir. 1999).

"To have a constitutionally cognizable property interest in a right or a benefit, a person must have a legitimate claim of entitlement to it." *Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012) (quotation omitted). These interests are generally created by state constitutions or statutory schemes. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-40 (1985). "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except for cause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (internal quotations omitted).

Here, Plaintiffs identify their rights in the Apartment Rebate Program secured by the *Graham* Settlement and *Graham* Judgement, as well as the 2010 Settlement Agreement, as the underlying interest that has been infringed upon. (Doc. # 22, ¶¶ 172-176). As discussed above, the Apartment Rebate Program was repealed by the City in 2010. (Docs. ## 56-20; 56-21). The repeal of the Apartment Rebate Program shows that no property interest is secured by a city ordinance.

Further, to the extent that the *Sophian Plaza* amended judgment affirmed a property interest secured by the *Graham* Settlement and *Graham* Judgment, the Court has found that Plaintiffs were

13

members of that class. Res judicata "applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce a judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo 1991). "Separate legal theories are not to be considered separate claims, even if the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Id*. (quotation omitted). The standard for determining if claims must be brought in a single cause of action or as separate causes of action is: "1) whether separate actions brought arise out of the same act, contract or transaction; 2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions." *Id*. (citing *Burke v. Doerflinger*, 663 S.W.2d 405, 407 (Mo. Ct. App. 1983)).

Here, the current claim, that Defendant violated Plaintiffs' due process rights, arises from the same act that was litigated in *Sophian Plaza*–Defendant's repeal of the Apartment Rebate Program. (*Compare* Doc. # 56-26, ¶ 4 *with* Doc. # 22, ¶¶ 170-187). The disputed contract is the same–the *Graham* Settlement. (*Compare* Doc. # 56-26, ¶ 12 *with* Doc. # 22, ¶ 173). Regarding the second element of the test, the Court has determined that Plaintiffs were a member of the *Sophian Plaza* class, meaning the parties were the same in both cases. Additionally, the subject matter of the present claim, receipt of the Apartment Rebate, is the same as the *Sophian Plaza* case. (*Compare* Doc. # 56-26, ¶ 4 *with* Doc. # 22, ¶ 175). Both requirements show that Count XI

was embraced by the *Sophian Plaza* case and cannot be brought as a separate cause of action.[7] Therefore, res judicata bars Plaintiffs from relitigating whether the *Graham* Settlement and Judgment establishes a property right.

Because no city ordinance protects a property interest and Plaintiffs cannot relitigate whether the *Graham* Settlement and *Graham* Judgment established a constitutionally protected property right, the Court must determine whether the 2010 Settlement created a property interest protected by the Constitution. The Eighth Circuit has stated that "[i]t is well established that a simple breach of contract does not rise to the level of a constitutional deprivation." *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) (quotation omitted). Here, Plaintiffs' due process claim arises from Defendant removing them from the Apartment Rebate Program pursuant to them withdrawing from Heartland. (Doc. # 22, ¶¶ 179-185). In their due process claim, Plaintiffs do not allege any deprivation beyond receipt of the Apartment Rebate as promised by the 2010 Settlement. (*Id*. at ¶¶ 179-187; Doc. # 56-23, ¶ 2). Because Plaintiffs' due process claim is essentially identical to their breach of contract claims, they fail to show that the 2010 Settlement gives rise to a constitutionally protected property interest.

No state statute or city ordinance creates a constitutionally protectable property interest. Plaintiffs are also barred from relitigating whether the *Graham* Settlement and *Graham* Judgment created a constitutionally protectable property interest by way of a court order. Lastly, Plaintiffs fail to show that the 2010 Settlement created a constitutionally protectable property interest. As such, Plaintiffs fail to establish a property right protected by the fourteenth amendment due process clause. Therefore, summary judgment in favor of Defendant is appropriate for Count XI.

---

[7] In fact, class counsel in *Sophian Plaza* brought federal due process claims but dismissed them prior to trial. (Doc. # 56-27).

## CONCLUSION

There is no disputed material fact that precludes summary judgment. Count IV is barred by res judicata. Plaintiffs breach of contract claims under Counts II and V fail as a matter of law. Lastly, Count XI fails because Plaintiffs have not established a property right protected by the fourteenth amendment due process clause. For these reasons and the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

                                                  s/ Gary A. Fenner  
                                                  GARY A. FENNER, JUDGE  
                                                  UNITED STATES DISTRICT COURT

DATED: March 21, 2019